Luis A. JARAMILLO,

v.

EXPERIAN INFORMATION SOLUTIONS, INC., CBA Information Services, BNBUSA, and National City Bank.

No. CIV. A. 00–5876.

United States District Court,
E.D. Pennsylvania.

May 21, 2001.

Reconsideration Granted June 20, 2001.

James A. Francis, Mark D. Mailman, Francis & Mailman, PC, Philadelphia, PA, for plaintiff.

Robert J. Martin, Lavin, Coleman, O'Neil, Ricci, Finarelli & Gray, Philadelphia, PA, Patrick G. Broderick, Jones, Day, Reavis & Pogue, New York, NY, for Experian Information Solutions, Inc., defendant.

John K. Semler, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for National City Bank, defendant.

## MEMORANDUM

GILES, Chief Judge.

### I. INTRODUCTION

Luis A. Jaramillo filed this action on November 17, 2000, against Experian Information Solutions, Inc. ("Experian"), CBA Information Services ("CBA"), BNBUSA, and National City Bank ("National City"), alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201.1 et seq. ("CPL"), defamation, and tortious interference with contractual relations.[1]

Count I of the complaint avers that Experian and CBA are liable under §§ 1681n and 1681o of the FCRA for willfully and negligently failing to conduct a proper and reasonable reinvestigation concerning inaccurate credit information after receiving notice of the dispute from the plaintiff, in violation of § 1681i(a).

Count II, directed against BNBUSA and National City, alleges that those defendants also violated §§ 1681n and 1681o of the FCRA by willfully and negligently failing to conduct an investigation of the inaccurate information that plaintiff disputed.

Count III, against Experian and CBA, alleges that Experian and CBA have knowingly and maliciously published statements, both orally and through writing, to various creditors, prospective credit grantors, other credit reporting agencies, and other entities that the inaccurate information belong to the plaintiff, each time a

---

1. Both CBA and BNBUSA have been dismissed from this action, pursuant to a stipulation of the parties.

credit report on plaintiff has been requested from any creditor, prospective credit grantors, furnisher, or other source.

Count IV, directed against BNBUSA and National City, alleges that those defendants knowingly published false negative representations both orally and in writing to various credit reporting agencies, collection agencies, and/or attorneys.

Count V, against all defendants, alleges that, pursuant to § 1681s of the FCRA, any violation of the FCRA constitutes an unfair or deceptive act or practice in violation of the Pennsylvania CPL, which was thus violated by all defendants.

Count VI, against BNBUSA and National City, alleges that BNBUSA and National City have willfully, maliciously, and intentionally harmed and interfered with plaintiff's contractual relations with third party creditors, by continuing to report inaccurate information to defendants Experian and CBA, and other credit reporting agencies and other entities in an effort to coerce plaintiff to pay the alleged debts.

Now before the court is National City's motion to dismiss plaintiff's claims against it. For the reasons that follow, the motion is granted, in part, and denied, in part.

## II.  FACTUAL BACKGROUND

Consistent with the review standards applicable to a motion to dismiss, Fed. R.Civ.P. 12(b)(6), the alleged facts vis a vis the plaintiff and National City, viewed in the light most favorable to the plaintiff, follow.

Mr. Jaramillo claims that National City has been reporting false, harmful, and derogatory credit information about him concerning a delinquent credit account that does not belong to him. Further, he claims that he disputed the inaccurate information not only with National City itself, but also with defendants Experian and CBA in March 1998, May 1998, January 1999, and that National City failed to perform reasonable investigations on each of these occasions as required by the FCRA, and continue to publish the inaccurate information to this day. (Compl.¶¶ 10, 14, 18, 19, 20, 36, 37.) Further, Mr. Jaramillo alleges that National City has willfully published multiple false and defamatory statements concerning the inaccurate information to various parties including Experian and CBA, and that National City's actions in repeatedly publishing the statements have directly and detrimentally interfered with his attempts to obtain credit and financing opportunities with third parties. (Compl.¶¶ 52–61, 68–71.)

As a result of National City's failing to conduct proper re-investigations of his disputes on the four separate occasions, and in continuing to publish the inaccurate information, Mr. Jaramillo claims that he has suffered serious financial and emotional distress from the denial of necessary financing and credit opportunities.

## III.  DISCUSSION

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate only if, accepting the well-pled allegations of the complaint as true, and drawing all reasonable inferences in the light most favorable to plaintiff, it appears that a plaintiff could prove no set of facts that would entitle it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Weiner v. Quaker Oats Co.*, 129 F.3d 310 (3d Cir.1997); *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989). The court may consider a statute of limitations defense in a motion to dismiss "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of

the pleading." *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n. 1 (3d Cir.1994). [1] Thus, if it is clear from the face of the complaint that the relevant statute of limitations has run, then the complaint must be dismissed as untimely. *See Cito v. Bridgewater Township Police Dep't,* 892 F.2d 23, 25 (3d Cir.1989) (quoting *Bethel v. Jendoco Construction Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978)).

## A. Plaintiff's Claims Against National City are Timely.

National City argues that the two-year statute of limitations has expired on all claims against it, because it began to run at the date of plaintiff's first discovery of the inaccurate information.

### 1. FCRA Claim

Any claim asserted under the FCRA must be brought within two years of the date the claim arises. 15 U.S.C. § 1681p. Mr. Jaramillo asserts that National City violated Section 623(b) of the FCRA, 15 U.S.C. 1681s–2(b), when, on dates unspecified in the complaint, it allegedly failed to conduct a proper reinvestigation upon receipt of Consumer Dispute Verification Forms ("CDV's") from Experian and/or CBA. Mr. Jaramillo concedes that, to the extent that National City received the CDV's prior to November 17, 1998, two years prior to the date his case was filed, his FCRA claim is barred by the statute of limitations. National City argues, however, that even if Mr. Jaramillo requested that Experian or CBA issue a CDV on or after November 17, 1998, his claim is time barred nonetheless. *See Ryan v. Trans Union Corporation, et al.,* 2000 WL 1100440 (N.D.Ill.2000).

In *Ryan,* the plaintiff alleged that in 1996, his estranged wife used his personal information to obtain credit cards from Fleet and Universal banks and subse-quently failed to make payments on the credit card accounts. That same year, the plaintiff began to contact Fleet and Universal in an attempt to escape liability for the debts. In March 1999, a consumer reporting agency sent a CDV to Fleet. Thereafter, the plaintiff filed his complaint, alleging that Fleet violated the FCRA by failing to properly reinvestigate his dispute after Fleet received the CDV in 1999. *Id.* at *2. In granting summary judgment, the court found that the 1999 CDV was nothing more than a rehashing of the plaintiff's 1996 dispute with Fleet. Because the court found that the plaintiff's dispute arose prior to September 30, 1997, the date of the Amendments to the FCRA imposing liability upon entities which furnish credit information to consumer reporting agencies, it held that the "pre-Amendment" FCRA governed, and granted summary judgment in favor of Fleet. *Id.* at *2–*3. *See also Fearon v. Fleet Credit Card Services,* 00–2395 (D.Minn.2/22/2001) (applying *Ryan* to find that a plaintiff may not allow a potential claim to collect dust and then revive it several years later by requesting that a consumer reporting agency issue a CDV).

Mr. Jaramillo argues that the "single publication rule" of *Ryan* should be rejected in this case, citing *Hyde v. Hibernia,* 861 F.2d 446 (5th Cir.1988). In *Hyde,* the defendant credit reporting agency argued that since the plaintiff's first injury from the defendant's unlawful conduct occurred well before the two year statute of limitations, the claim was time barred. The fifth circuit held that, due to the confidential nature of a credit report, as well as the fact that each violation resulted in a distinct and separate injury, "each transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies." *Id.* at 450. The court reasoned:

We do not find that the rationale underlying the single publication rule applicable to the Fair Credit Reporting Act. The major harm may, indeed, result from the first transmission of defamatory material to an institution, but the confidential nature of a credit report necessarily means that each new issuance results in a distinct and separate inquiry.... [E]ach transmission of the same credit report is a separate and distinct tort to which a separate statute of limitations applies. The failure of the consumer to mitigate his damages by filing suit when he is first injured, thus permitting a more widespread circulation of the credit information, should have a "bearing [only] on the [calculation of] damages."

*Id.* (quoting Restatement of Torts 2d § 577A).

■ Further, in *Ryan*, the plaintiff had not pled a single specific action or violation committed by defendant during the relevant time period, or there was no claim of attempted contact of the defendant during that time. *Ryan*, 2000 WL 1100440, at *5. The court in *Ryan* held that the consumer had to show both that the defendant had received a CDV within the relevant statute of limitations and also that the defendant had failed to investigate properly and/or failed to correct the disputed information. *Ryan* never reached the issue of republication in relation to the statute of limitations, and it did not conclude that aged inaccurate information absolves an information provider from investigating and correcting after the statute's effective date. *Id.* at *7. In *Ryan*, had the plaintiff been able to show violations after September 1, 1997, regardless of when defendant's error had first occurred, the statute of limitations would not have barred his claim. This court believes the fifth circuit reasoning

makes sense and should be applied to the facts of this case.

■ Here, Mr. Jaramillo alleges that National City has violated the FCRA by reporting inaccurate information to various credit reporting agencies, including defendants Experian and CBA. (Compl.¶ 18.) While the complaint does not specify the particular dates on which National City reported, it does specify that Experian and CBA published the inaccurate information within the two year statute of limitations—specifically, on February 24, 1998, December 1998, and March 13, 1999. (Compl.¶ 16.) Further, it specifies the dates within the statutory period on which Mr. Jaramillo disputed the inaccurate information with Experian and CBA—March 1998, May 1998, January 1999, and April 1999. (Compl.¶ 14.) It is unreasonable to expect that Mr. Jaramillo would have knowledge, at the pleading stage of the litigation, of the specific dates on which National City reported the inaccurate information to the credit reporting agencies. The assertion that those companies published the inaccurate information within the statutory period suffices, at this stage, to establish the claim that National City continued to report that information to them within the statutory period, regardless of whether it had begun reporting prior to the two year statute of limitations.

### 2. Defamation Claim

■ National City also argues that plaintiff's defamation claim, with its one year statute of limitations, 42 Pa. S.C. § 5523, should be dismissed, because the latest date which plaintiff alleges that Experian and CBA published inaccurate information about plaintiff, April 1999, occurred more than one year before plaintiff filed his complaint, on November 17, 2000. (Nat. City Mot. to Dismiss, at 4–5.) As discussed *supra*, this argument is prema-

ture. While Mr. Jaramillo has alleged that Experian and CBA last published inaccurate information in April 1999, it is impossible for him to have known, at the time he filed the complaint, the last date on which National City reported such inaccurate information to credit reporting agencies. Only after this date is made known to plaintiff through discovery, will the court be able to consider a statute of limitations argument to dismiss. At this stage, plaintiff's pleading that National City "continued to report the derogatory information," (Compl.¶ 18), survives the statute of limitations argument in National City's motion to dismiss.

### B. Plaintiff's CPL Claim Against National City is Preempted by the FCRA.

National City also argues that plaintiff's CPL claim is preempted by the FCRA because, as the statute provides, "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies...." 15 U.S.C. § 1681t(b)(1)(F).

Plaintiff offers three arguments that section 1681t(b)(1)(F) does not preempt state causes of action.

First, plaintiff contends that section 1681t should be read in conjunction with section 1681h(e), which provides only a qualified immunity for credit reporting agencies, users, and furnishers, from suit in defamation, invasion of privacy, or negligence unless false information was furnished with malice or willful intent to injure such consumer. *See* 15 U.S.C. § 1681h(e); Pl. Resp. to Nat. City Mot. to Dismiss, at 12–13. Section 1681h(e) provides:

### (e) Limitation of liability

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). Because Congress did not amend this language when it amended the FCRA in 1996 with, *inter alia*, section 1681t, plaintiff asserts, those two sections must be read as working in conjunction in order to effectuate congressional intention. Plaintiff thus argues that its CPL claims against National City of willful and intentional failure to reinvestigate the information disputed by the plaintiff should stand.

■ The court disagrees. While Congress did not specifically provide in the 1997 amendments that section 1681t supercedes 1681h, it is clear from the face of section 1681t(b)(1)(F) that Congress wanted to eliminate all state causes of action "relating to the responsibilities of persons who furnish information to consumer reporting agencies."[2] Any other interpreta-

---

**2.** With the exception of suits under Massachusetts and California state law, carved out in

§§ 1681t(b)(1)(F)(i) and (ii), respectively.

tion would fly in the face of the plain meaning of the statute.

Second, plaintiff argues that the FCRA does not preempt state law as long as the state law is not inconsistent with the FCRA. 15 U.S.C. § 1682t(a).[3] However, here, state law *is* inconsistent with the FCRA, specifically with section 1681t(b)(1)(F), discussed *supra*.

Finally, plaintiff contends that the plain language of section 1681t(b)(1)(F) expressly preempts only those state statues which regulate the responsibilities of credit furnishers under section 1691s–2, such as state credit reporting laws. Pennsylvania's CPL, plaintiff asserts, does not specifically regulate credit reporting, but rather is a general statute proscribing unfair and deceptive practices, and thus is not preempted by the FCRA. Pl. Resp. to Mot. to Dismiss at 14–15. This argument is unpersuasive. The plain language of section 1681t(b)(1)(F) clearly eliminated all state causes of action against furnishers of information, not just ones that stem from statutes that relate specifically to credit reporting. To allow causes of action under state statutes that do not specifically refer to credit reporting, but to bar those that do, would defy the Congressional rationale for the elimination of state causes of action.

For the reasons stated above, pursuant to 15 U.S.C. 1681t(b)(1)(F), the CPL claim against National City is preempted by the FCRA.

Further, although National City did not put forth the argument in its briefs, for these same reasons, plaintiff's state law defamation claim against National City must also be dismissed.

## C. *Private Right of Action for Consumers Against Furnishers Under FCRA*

The duties of furnishers of information upon receipt of notice of dispute from a consumer reporting agency are codified at subsection (b) of 15 U.S.C. § 1681s–2, which is entitled, "Responsibilities of furnishers of information to consumer reporting agencies." Upon notice from a consumer reporting agency that furnished information has been disputed, the furnisher of the information is required to: (1) investigate the disputed information; (2) review all of the relevant information provided to it by the consumer reporting agency; (3) report the results of its investigation to the agency; and (4) report the results to all other agencies to which the information was originally furnished if an inaccuracy or an incompleteness is discovered. 15 U.S.C. § 1681s–2(b)(1)(A–D).

■ Section 1681s–2(b)(1) provides, in pertinent part:

**(b) Duties of furnishers of information upon notice of dispute**

**(1) In general**

After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—

15 U.S.C. § 1681s–2(b)(1). Section 1681i(a)(2), referenced above, provides:

**(2) Prompt notice of dispute to furnisher of information.—**

---

**3.** Section 1681t(a) provides: Except as provided in subsections (b) and (c) of this section, this subchapter does not annul, alter, affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to the collection, distribution, or use of any information on consumers, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency.

**(A) In general.**—Before the expiration of the 5–business–day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer.

**(B) Provision of other information from consumer.**—The consumer reporting agency shall promptly provide to the person who provided the information in dispute all relevant information regarding the dispute that is received by the agency from the consumer after the period referred to in subparagraph (A) and before the end of the period referred to in paragraph (1)(A).

Section 1681i(a)(2) creates a duty owed only by credit reporting agencies to report inaccuracies to furnishers of information. Thus, by referencing section 1681i(a)(2), section 1681s–2(b) creates a reciprocal duty owed by furnishers to credit reporting agencies to investigate reported inaccuracies.

1. *Whether Mr. Jaramillo has met the requirements of section 1681s–2(b)*

As discussed *supra*, to state a cause of action under 1681s–2(b) requires a pleading that a consumer reporting agency notified a furnisher of a dispute, pursuant to 1681i(a)(2), so as to trigger a duty under section 1681s–2(b). *See Carney*, 57 F.Supp.2d at 502. While Mr. Jaramillo has alleged that he had reported inaccuracies to National City himself, he has not alleged that, pursuant to 1681i(a)(2), any credit reporting agency had brought such inaccuracies to the bank's attention.

■ Although Mr. Jaramillo has not yet sufficiently pled a cause of action against National City under section 1681s–2(b), he has alleged in his complaint that he "repeatedly disputed the inaccurate information with defendants Experian and CBA both by oral and written communications to their representatives and by following Experian's and CBA's established procedure for disputing consumer credit information in filling out and sending Reinvestigation Request forms via first-class mail." (Compl.¶ 13.) When he filed this complaint, Mr. Jaramillo could not have known whether Experian or CBA had forwarded the inaccurate information to National City, pursuant to 1681i(a)(2). When this information is provided to plaintiff in discovery, it will become clear whether Mr. Jaramillo has a cause of action against National City, or solely against the credit reporting agencies. At that time, National City will have an opportunity to renew its motion to dismiss, if it has not been established that National City received a report of inaccurate information from a credit reporting agency, pursuant to section 1681i(a)(2). At this stage, however, National City's motion to dismiss Mr. Jaramillo's FCRA claim must be denied.

2. *Whether section 1681s–2(b) provides a private right of action for Mr. Jaramillo*

Even if Mr. Jaramillo has stated a cause of action under section 1681s–2(b), it is unclear from the language of the statute whether Congress intended to create a private right of action for consumers against furnishers of information, such as National City. Whether the FCRA provides a cause of action for consumers against furnishers of information who violate these provisions is a question of first impression within this district and the third circuit, and it has been answered

within among other circuits. *Compare Carney v. Experian Information Solutions, Inc.,* 57 F.Supp.2d 496 (W.D.Tenn. 1999); *Banks v. Stoneybrook Apartment,* 2000 WL 1682979 (M.D.N.C.2000) *with Dornhecker v. Ameritech Corp.,* 99 F.Supp.2d 918 (N.D.Ill.2000); *Campbell v. Baldwin,* 90 F.Supp.2d 754 (E.D.Tex.2000).

While Section 1681s–2(d) limits enforcement of the duty of furnishers of information to provide accurate information under section 1681s–2(a), providing, "[s]ubsection (a) of this section shall be enforced exclusively under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section," it is not entirely clear whether such a limitation is also applicable to alleged violators of section 1681s–2(b), such as National City.

In *Carney,* a consumer brought an action against multiple defendants, both credit reporting agencies and furnishers, for, *inter alia,* violations of the FCRA. Pursuant to a motion to dismiss by Exxon Corporation and G.E. Capital, Inc., the furnishers in the action, the court found that a consumer is not the proper party to bring an action for enforcement of the obligations of furnishers of information pursuant to 15 U.S.C. § 1681s–2. 57 F.Supp.2d at 502. The court reasoned, "The duties described in subsection (b) of § 1681s–2 are triggered only upon notice received from a consumer reporting agency, not the consumer, and appear to exist solely for the benefit of consumer reporting agencies which face liability under the remainder of the FCRA to the consumer for erroneous and inaccurate reporting." *Id.* (citing *DiGianni v. Stern's,* 26 F.3d 346, 349 (2d Cir.1994)). Consequently, the court concluded, the obligation created by the statute is owed only to the consumer reporting agency, not to the consumer,

thus plaintiff could not state a claim under 15 U.S.C. § 1681s–2(b). *See id.*

In *Dornhecker,* the court disagreed with this reasoning and held that the FCRA does provide an individual consumer with a private right of action against a furnisher of credit information. 99 F.Supp.2d at 925–26 (citing *Campbell,* 90 F.Supp.2d at 755). The court reasoned that such a holding was consistent with the Supreme Court's directives in determining whether a private right of action exists, as explained in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). *Id.* at 926. In *Ash,* the Court set forth four factors for consideration in determining whether a private remedy is implicit in a statute not expressly providing for one: (1) whether the plaintiff is a member of the class for whose benefit the statute was enacted; (2) whether the legislative history indicates any legislative intent, explicit or implicit, either to create or deny such a remedy; (3) whether the implication of a private remedy would frustrate the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *See Ash,* 422 U.S. at 78, 95 S.Ct. 2080 (cited in *Dornhecker,* 99 F.Supp.2d at 926).

Since National City did not address this issue in its briefs, this court will permit a supplemental briefing schedule to discuss the significance of the silence of section 1681s–2(d) as to the exclusivity of enforcement of section 1681s–2(b).

*C. Plaintiff's Tortious Interference Claim Against National City is Preempted by the FCRA.*

■ National City also argues that plaintiff's claim of tortious interference with contractual relations against it should be dismissed, because, it asserts, plaintiff has not pled the existence of any specific contract or prospective contract with

which National City interfered. *Triffin v. Janssen*, 426 Pa.Super. 57, 626 A.2d 571, 574 (1993). The court agrees. In order to sustain his claim, Mr. Jaramillo must first demonstrate the existence of a prospective contract with which National City intentionally interfered. *Alvord–Polk, Inc. v. F. Schumacher & Co.*, 37 F.3d 996, 1015 (3d Cir.1994). Since Mr. Jaramillo has not identified any specific contractual relation with which National City interfered, his tortious interference with contractual relations claim must be dismissed as a matter of law.

### IV.  CONCLUSION

For the foregoing reasons, National City's Motion to Dismiss Plaintiff's Complaint is granted, in part, and denied, in part.